IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LISA A. JEFFREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-12-356-F |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On October 22, 2009, Plaintiff protectively filed her application for benefits, alleging that she became disabled on October 15, 2009. (TR 112-114, 148). At that time, Plaintiff

was 43 years old. She alleged that she was disabled due to diabetes, neuropathy in her feet and legs, fibromyalgia, and panic attacks. (TR 129, 162). Plaintiff described a high school education and previous work experience as a housekeeper, janitor, and cook. (TR 139-143). On a form completed on November 3, 2009, Plaintiff described her usual daily activities and functional abilities, and Plaintiff's husband also submitted a form dated November 3, 2009, describing Plaintiff's usual daily activities and functional abilities. (TR 168-175, 179-186).

The administrative record includes office notes of medical treatment of Plaintiff by Dr. Garrick Shreck, D.O., in 2008 and 2009 and Dr. Jim Knecht, D.O., in 2009 and 2010. (TR 223-255, 304-307, 313-314). Dr. Knecht completed a Physical Medical Source Statement dated April 20, 2010. (TR 308-310). The record also includes the report of a consultative physical examination of Plaintiff conducted by Dr. Mark Carlson, D.O., on November 30, 2009, and the report of a consultative psychological evaluation of Plaintiff conducted by Dr. Robert Schlottmann, Ph.D., on January 6, 2010. (TR 260-265, 267-269). Following Dr. Carlson's consultative examination of Plaintiff, Dr. Janet Rodgers, M.D., completed a physical residual functional capacity ("RFC") assessment dated January 27, 2010, addressing Plaintiff's physical RFC for work. (TR 285-292). Subsequent to Dr. Schlottman's consultative psychological evaluation of Plaintiff, Dr. Carolyn Goodrich, Ph.D., completed a mental psychiatric review technique form dated January 20, 2010, concerning the severity of Plaintiff's mental impairment due to anxiety. (TR 271-283).

Plaintiff's application was administratively denied on initial and reconsideration reviews. (TR 47-49). At Plaintiff's request, a hearing *de novo* was conducted before

Administrative Law Judge Rose ("ALJ") on February 23, 2011. (TR 22-46). On April 28, 2011, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 11-18). The Appeals Council declined Plaintiff's request to review this decision. (TR 1-3).

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner embodied in the ALJ's determination. Judicial review of a decision by the Commissioner is limited to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(I). The Commissioner follows a five-step sequential evaluation procedure to determine whether a claimant is disabled. Doyal, 331 F.3d at 760. In the first four steps of this process, the claimant has the

burden of establishing a prima facie case of disability. Id.  In this case, Plaintiff's claim was denied at step five.  At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual functional capacity] . . . to perform work in the national economy, given her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

III. ALJ's Decision

Following the requisite sequential evaluation procedure, the ALJ found at step one that Plaintiff met the insured status requirements through the date of the decision[1] and that Plaintiff had not worked since her alleged disability onset date of October 15, 2009. (TR 13). At step two, the ALJ found that Plaintiff had severe impairments due to diabetes, peripheral neuropathy, carpal tunnel syndrome, fibromyalgia, and obesity. (TR 13).  Following the required procedure for analyzing the severity of an alleged mental impairment set forth in the regulations, 20 C.F.R. § 404.1520a, the ALJ found that Plaintiff did not have a severe mental impairment due to anxiety and panic disorder. (TR 13). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that were disabling *per se* under the agency's Listing of Impairments.  Considering the medical and nonmedical

---

[1]The ALJ stated that Plaintiff's earnings record showed she had acquired sufficient quarters of coverage to remain insured through June 30, 2011. (TR 11).  However, the agency stated on two previous occasions that Plaintiff's insured status expired on June 30, 2010. (TR 125, 148).  The Appeals Council did not address this discrepancy. Nevertheless, the ALJ found that Plaintiff was not disabled "through the date of this decision." (TR 11, 18).  Thus, the Court will consider the evidence as it relates to the relevant period between October 15, 2009, the date on which Plaintiff alleged she became disabled, and April 28, 2011, the date of the ALJ's decision.

evidence in the record, the ALJ found at step four that Plaintiff had the RFC to perform work at the light exertional level with restrictions of "no climbing of ladders, ropes or scaffolds; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and frequent handling and fingering." (TR 15-17).  In connection with the step four finding, the ALJ concluded that Plaintiff's statements concerning disabling symptoms were not entirely credible. (TR 16-17).  The ALJ also considered the opinion of Plaintiff's treating physician, Dr. Knecht and found, for reasons stated in the decision, that the opinion was not entitled to "controlling weight because it is in conflict with Dr. Knecht's own treatment records and inconsistent with the other substantial evidence as noted" in the decision. (TR 16-17).

In light of her RFC for work and the ALJ's testimony concerning the exertional requirements of Plaintiff's past relevant work, the ALJ found that Plaintiff was not able to perform any of her previous jobs as a housekeeper, school janitor, dishwasher, and cook. (TR 17).  (TR 17).  Finally, at step five, relying on the ALJ's testimony, the ALJ found that Plaintiff was not disabled because she could perform jobs available in the national economy, including the jobs of office cleaner, press machine operator, order clerk, and assembler. (TR 17-18).

IV. <u>Evaluation of Treating Physician's Opinion</u>

Plaintiff contends that the Commissioner's decision should be reversed because the ALJ did not follow the proper standard for evaluating Dr. Knecht's opinion set forth in a Physical Medical Source Statement dated April 20, 2010. (TR 308-310).  In this statement, Dr. Knecht stated that Plaintiff was capable of sitting for up to one hour during an 8-hour

5

workday, standing or walking for 30 minutes at a time or up to 2 or 3 hours in an 8-hour workday, lifting up to 10 pounds frequently or occasionally, never squatting or climbing, occasionally bending or crawling, and frequently reaching. (TR 308-309). Dr. Knecht further opined that Plaintiff's ability to use her feet or hands for repetitive movements was "limited" and that Plaintiff was markedly restricted in her ability to drive, moderately limited in her ability to be exposed to dust, fumes, and gases, and mildly limited in her ability to be around moving machinery or vibrations. (TR 309). As objective findings to support these restrictions, Dr. Knecht stated that Plaintiff exhibited tenderness to palpation in her "muscles (fibromyalgia)," decreased sensation in her feet due to diabetic neuropathy and "constant burning pain," and inability to walk on her toes or heels. (TR 309-310).

In her decision, the ALJ recognized that Dr. Knecht stated in an office note in April 2010 that Plaintiff was "unable to be gainfully employed [due] to her neuropathy" and that Dr. Knecht also effectively found that Plaintiff was not able to perform even sedentary work activity in his April 2010 medical opinion. (TR 16, 306). As the ALJ recognized (TR 16), an ALJ must generally give the opinion of a treating physician controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

An ALJ "must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the treating source's medical opinion and the reason for that weight." Id. at 1300 (quotations omitted). The ALJ must also set forth specific, legitimate reasons for completely rejecting an opinion of a treating physician. Id. at 1301.

The ALJ set forth the following rationale and conclusions with respect to Dr. Knecht's medical source statement:

> A review of Dr. Knecht's treatment records fails to show any lack of dexterity or coordination, or loss of locomotion. Based on the claimant's own statements about her daily activities, she is quite active and even mows the yard on a riding lawn mower. Social Security Ruling 96-5p states, in pertinent part, that some issues are not medical issues, but are administrative findings. An example of such an issue is what an individual's [RFC] is. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance (see also 20 CFR 404.1527(e)). While I have carefully considered Dr. Knecht's opinion, it cannot be given controlling weight because it is in conflict with Dr. Knecht's own treatment records and inconsistent with the other substantial evidence as noted above.

(TR 16-17). The ALJ also described Plaintiff's testimony at the hearing and her statements to the consultative examiner, Dr. Carlson, concerning her activities. (TR 15-16). The ALJ accurately described the objective findings in Dr. Carlson's report of his physical examination of Plaintiff. (TR 16). The ALJ also noted Dr. Knecht's statement in his record that Plaintiff's blood sugar levels were very well controlled and that her diabetes was "very mild." (TR 16). Further, the ALJ noted that Plaintiff did not see Dr. Knecht from October 2009 until April 2010, and she did not see him again until December 2010. (TR 16).

Plaintiff misreads the record in describing Plaintiff's record of treatment by Dr.

7

Knecht. Plaintiff states that Dr. Knecht "continually treated" Plaintiff "since 2008" for diabetes and diabetic neuropathy. Plaintiff's Opening Brief, at 5. The record actually reflects that Plaintiff was treated by Dr. Knecht for diabetes and/or diabetic neuropathy on only five occasions in a 2-year period between December 2008 and December 2010. (TR 295-307, 313-314).

Plaintiff also misreads the record in describing the report of the consultative examiner, Dr. Carlson, who according to Plaintiff found that medications were "unsuccessful" in treating Plaintiff's diabetes and diabetic neuropathy. Plaintiff's Opening Brief, at 6. In his report, Dr. Carlson noted Plaintiff's statement that she had "tried medications in the past but those have provided very little relief." (TR 264). The doctor's report of Plaintiff's subjective statements concerning her medical history is not a medical opinion concerning the success or lack of success of conservative measures of treatment.

Plaintiff argues that the ALJ erred when the ALJ reasoned that "[t]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." (TR 17). However, this statement is an accurate summary of the controlling regulation and regulatory ruling concerning the evaluation of medical source opinions. See 20 C.F.R. § 404.1527(d)(medical source opinions that claimant is disabled are "opinions on issues reserved to the Commissioner" and agency "will not give any special significance to the source of an opinion on issues reserved to the Commissioner"). Although medical source opinions about any issue "including opinions about issues that are reserved to the Commissioner" must be considered, "treating source opinions on issues that are

8

reserved to the Commissioner are never entitled to controlling weight or special significance." Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *2 (July 2, 1996).

Considering the regulations and regulatory rulings on this issue, Dr. Knecht's opinion that Plaintiff was "unable to be gainfully employed [due] to her neuropathy" was not a medical opinion but, rather, an opinion on an issue reserved to the Commissioner. The ALJ's decision reflects that the ALJ considered the physician's opinion that Plaintiff was disabled but accurately explained that this issue was one reserved for the Commissioner and therefore was not entitled to controlling weight or special significance.

The ALJ provided reasons in the decision for giving only some, and not controlling, weight to Dr. Knecht's medical source opinion concerning Plaintiff's work-related abilities. In explaining her decision, the ALJ considered the nature of Plaintiff's treatment by Dr. Knecht, including the lack of persistent treatment by Dr. Knecht for diabetes or diabetic-related neuropathy and inconsistencies between Dr. Knecht's findings in the medical source opinion and his own treatment records, which reflected normal range of motion, no neurological deficits other than loss of sensation in the feet, legs, and hands, no loss of coordination, and no loss of strength. (TR 297-298, 300, 301-302, 303, 304, 305, 306-307, 314). The ALJ did not err in considering the "nature and extent of the treatment relationship" in evaluating Dr. Knecht's medical opinion. Watkins, 350 F.3d at 1301. See Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011)(factors relevant to evaluation of doctor's opinion include "the nature and extent of the treatment relationship" and "the degree to which the physician's opinion is supported by relevant evidence" in the record).

The ALJ also considered inconsistencies between Dr. Knecht's findings and other objective medical evidence in the record, including the largely normal findings set forth in Dr. Carlson's report of his consultative examination of Plaintiff (TR 260-265). See id. ("consistency between the [treating doctor's] opinion and the record as a whole" is pertinent to evaluation of medical opinion). Dr. Carlson noted in his report that during the consultative examination Plaintiff exhibited normal stability, safety, and speed of gait, she did not use assistive devices, she rose from a chair with normal speed, and her fine motor skills in her upper extremities were intact. (TR 265).

The ALJ also considered inconsistencies between Dr. Knecht's findings and Plaintiff's own statements to her treating and consultative examiners and her husband's statements concerning her functional abilities, which, as the ALJ reasoned, showed Plaintiff was "quite active." (TR 17). Consistent with the ALJ's description of Plaintiff's testimony and statements in the record (TR 16), the record shows Plaintiff performed housework, including vacuuming, dusting, and laundry, cooked meals, fed her dogs and horses, sat with her elderly mother, drove a riding lawn mower, shopped for groceries, attended her daughter's barrel racing events, attended church weekly, and visited with friends and family by phone and on a computer. Morever, the consultative psychological examiner described Plaintiff as a "very sociable, outgoing, jolly individual." (TR 269). Dr. Knecht stated that Plaintiff's diabetes was in "good control" in April 2010. (TR 312). The ALJ's rationale and conclusions with respect to Dr. Knecht's medical source opinion are well supported by the record, and no error occurred with respect to this evaluation.

V. Evaluation of Fibromyalgia and Credibility

Plaintiff contends that the ALJ "wrongfully imposed an additional medical burden" on Plaintiff to establish her fibromyalgia impairment. Closely related to this argument is Plaintiff's argument that the ALJ's credibility determination is not supported by the evidence in the record.

As stated previously, the ALJ's decision reflects the ALJ's finding that one of Plaintiff's severe impairments was fibromyalgia. The ALJ recognized that Dr. Knecht had diagnosed Plaintiff was fibromyalgia in April 2010. The ALJ discussed the American College of Rheumatology's diagnostic criteria for fibromyalgia established in 1990 and reasoned that Dr. Knecht's diagnosis was not based on "trigger points" that were generally required by the American College of Rheumatology's 1990 diagnostic criteria. (TR 16).

Subsequent to the ALJ's decision in this case, the agency issued a regulatory ruling to guide administrative factfinders in evaluating a disability claim involving fibromyalgia. The agency declared in this ruling that fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling ("SSR") 12-2p ("Evaluation of Fibromyalgia), 2012 WL 3104869 (effective July 25, 2012). Employing the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, the ruling explains that a finding of a medically determinable impairment of fibromyalgia requires "all three of the following," including (1) a "history of widespread pain - that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the

waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) - that has persisted . . . for at least 3 months" and (2) "[a]t least 11 positive tender points on physical examination . . . found bilaterally (on the left and right sides of the body) and both above and below the waist" and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." Id. at * 2, 3.

Employing the 2010 American College of Rheumatology Preliminary Diagnostic Critera, the ruling explains that a finding of medically determinable impairment of fibromyalgia requires "all three of the following criteria," including (1) "[a] history of widespread pain," (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems . . . , waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." Id. at 3.

SSR 12-2p provides guidance concerning the evaluation of a person's statements about symptoms and functional limitations. This evaluation corresponds with and follows the sequential process the agency follows in making other credibility determinations.

The agency prescribes that the first step of the evaluation process requires that there be "medical signs and findings that show the person has [a medically determinable impairment] which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 5. If it is determined that the claimant has a medically-determinable impairment due to fibromyalgia, this first step is satisfied. Secondly, the "intensity and

persistence of the person's pain or any other symptoms" must be evaluated and a determination made concerning "the extent to which the symptoms limit the person's capacity for work." Id. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." Id.  This evaluation requires "a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning." Id.

The ALJ did not "discount" Plaintiff's fibromyalgia, as Plaintiff suggests. Rather, the ALJ's decision reflects consideration of the Plaintiff's symptoms and functional limitations resulting from this and her other severe impairments in light of the objective and nonobjective evidence in the record.

"Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).  Factors relevant to the credibility determination include the claimant's "medication[s] and [their] effectiveness, extensiveness

of the attempts (medical or nonmedical) to obtain relief, the frequency of [the claimant's] medical contacts, the nature of [the claimant's] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). See also 20 C.F.R. § 404.1529(c)(3)(listing factors relevant to symptoms that may be considered by ALJ).

The ALJ's decision reflects consideration of several of the relevant factors, including Plaintiff's medications, the frequency of her medical treatment, the nature of her daily activities, and the consistency of nonmedical testimony with the objective medical evidence in the record. Plaintiff does not point to any evidence in the record showing that Plaintiff's fibromyalgia or other severe impairments had resulted in functional limitations inconsistent with the ALJ's RFC assessment.

The record reflects that Plaintiff had sought treatment for pain in her shoulders and neck only once, in April 2010. In response to Plaintiff's complaint and findings of "tenderness to palpation" in Plaintiff's spinal area, Dr. Knecht diagnosed Plaintiff with fibromyalgia and increased her medication previously prescribed for pain, Neurontin®. As the ALJ reasoned, Plaintiff did not persistently seek treatment for fibromyalgia or her other severe impairments because she did not seek medical treatment between October 2009 and April 2010, and she did not return for follow-up treatment until December 2010. Moreover, as the ALJ recognized, there are no records of treatment of Plaintiff by Dr. Knecht or any other physician after December 2010.

The ALJ determined that the medical consultants' opinions concerning Plaintiff's physical RFC for work were entitled to "great weight" as those opinions were consistent with the evidence in record showing Plaintiff "is quite active and repeated examinations fail to show any lack of dexterity or coordination, or loss of locomotion." (TR 17). The ALJ's RFC assessment is consistent with the medical consultants' RFC assessments. (TR 15, 286, 294). However, in recognition of the objective evidence in the record reflecting that Plaintiff exhibited some sensory loss in her legs and feet and weak heel and toe walking and consistent with Dr. Knecht's RFC findings that Plaintiff's ability to use her hands and feet for repetitive movements was "limited," (TR 309), the ALJ included additional functional restrictions in her RFC assessment that were not included in the medical consultants' RFC assessments. (TR 287). The ALJ did not err in evaluating the credibility of Plaintiff's complaints of disabling pain, and the ALJ's credibility determination is well supported by the record. Because substantial evidence in the record, including the VE's testimony concerning the availability of jobs for an individual with Plaintiff's vocational characteristics and RFC for work, supports the Commissioner's decision, the decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____April 2nd_____, 2013, in

accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 13th day of March, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE